2025 UT App 197

# THE UTAH COURT OF APPEALS

DANIEL N. MUSSER,
Appellant,
*v.*
TOWN OF APPLE VALLEY, DINA MASON WALTERS, AND KEVIN SAIR,
Appellees.

Opinion
No. 20241334-CA
Filed December 26, 2025

Fifth District Court, St. George Department
The Honorable Eric Gentry
No. 220500229

Justin D. Heideman and Norman W. Peat, Jr.,
Attorneys for Appellant

Roger H. Hoole, Attorney for Appellees

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES RYAN M. HARRIS and RYAN D. TENNEY concurred.

OLIVER, Judge:

¶1 Daniel N. Musser was hired by the mayor pro tem of the Town of Apple Valley (Apple Valley) to serve as the chief of its fire and police departments. Musser entered into an employment contract (the Contract), which the mayor pro tem signed on Apple Valley's behalf. But the Apple Valley Town Council (Council) did not approve the Contract. When Dina Mason Walters took office as mayor one month later, she and the Council terminated Musser's employment. Musser filed suit against Apple Valley, Walters, and Council member Kevin Sair (collectively, the Town) alleging breach of the Contract. The Town moved for summary judgment on the ground that the Contract was invalid, which the district court granted. We affirm the district court's grant of summary judgment.

BACKGROUND[1]

*Musser's Employment*

¶2 On November 2, 2021, Walters was elected mayor of Apple Valley, with her term beginning in January 2022. Two days later, on November 4, 2021, Musser entered into the Contract with Apple Valley to employ him as the chief of its fire and police departments.[2] The mayor pro tem signed on behalf of Apple Valley. Musser began his employment on November 11, 2021.

¶3 In response to concerns about the validity of the Contract and Musser's employment, the mayor pro tem presented the Council with a resolution (the Appointment Resolution) on December 2, 2021, to confirm Musser's appointment as the police and fire chief. Of the five Council members, only three voted on the Appointment Resolution, with two in favor and one against. The other two Council members were absent from the vote.

¶4 A decade prior to the vote on the Appointment Resolution, the Council had passed a resolution establishing rules for voting on motions before it (the Voting Resolution), which states,

> The majority of the public body constitutes a quorum for the public body and all motions of the public body shall be approved by a majority of the

---

1. "In reviewing the district court's grant of summary judgment, we view the facts in the light most favorable to [Musser], as the nonmoving party." *Dierl v. Birkin*, 2023 UT App 6, n.1, 525 P.3d 127. We present contrary facts only when necessary to understand the issues raised on appeal.

2. Although various signed and unsigned versions of the Contract were presented to the district court, we need not decide which version controls because the particulars of the Contract are not at issue on appeal.

> public body (*not just a majority of the quorum in attendance*) . . . . There must be a minimum of a majority of the entire public body of affirmative votes for adoption of a motion.

(Emphasis added.) Thus, the required majority of the Council did not vote to approve the Contract. Despite this, Musser continued to work as the police and fire chief.

¶5      Walters took office on January 3, 2022. A week later, she and a majority of the Council sent Musser a letter terminating his employment, which gave several reasons for Musser's termination. As relevant to this appeal, the letter explained that Musser's termination was necessary because the Council "never approved or ratified" the Contract.

*The Lawsuit*

¶6      In response to his termination, Musser filed a complaint against the Town alleging breach of the Contract because he was terminated "without notice" and was not given the severance he was entitled to under the Contract. The Contract described reasonable and sufficient notice as "the greater of four (4) weeks or any minimum notice required by law" and provided, "Upon any termination, by [Apple Valley], the employee will be entitled to one full year of compensation paid within 14 days of termination."

¶7      The Town moved for summary judgment, arguing that the Contract was invalid. The Town also argued that because Apple Valley was operating under a council-mayor form of government, Utah law required the advice and consent of the Council when appointing a department head. *See* Utah Code § 10-3b-202(1)(d)(ii). And the Town pointed out that the Appointment Resolution failed to pass because only a majority of the Council members present voted in favor, rather than a majority of the Council as required by the Voting Resolution. In response, Musser

argued the Contract was valid and he was entitled to the benefits of the Contract under several different theories, including that the mayor pro tem had authority to hire him and that Apple Valley ratified the Contract.

¶8 The district court granted the Town's motion for summary judgment. For purposes of the motion, the court assumed the existence of the Contract but noted its existence was "not material to the [c]ourt's analysis." The court then considered whether the Contract was entered into without the advice and consent of the Council. The court reiterated that the Appointment Resolution's "effort to seek the advice and consent of the . . . Council after the Contract had already gone into effect proved ineffective" and there was "no genuine issue of material fact that [Musser's] appointment was not approved by the . . . Council pursuant to Apple Valley's" policies and procedures because "less than a majority of the entire governing body voted in the affirmative." The court also concluded that because the Council did not give its advice or consent, the Contract "was a violation of Utah law" and of Apple Valley's policies and procedures.

¶9 The district court then turned to whether the Contract was void as an ultra vires act[3] if it was entered into without the advice and consent of the Council and, if invalid, whether it would still be enforceable. Quoting *Weese v. Davis County Commission*, 834 P.2d 1 (Utah 1992), the court explained that "[a]n employee's contract with a public employer that was executed in violation of statute is 'null and void as an ultra vires act.'" *Id.* at 3. Then quoting *Knight v. Salt Lake County*, 2002 UT App 100, 46 P.3d 247, the court stated that "a public employee's rights are 'statutory rather than contractual.'" *Id.* ¶ 8. Based on *Weese* and *Knight*, the district court concluded,

---

3. An ultra vires act is one which is "[u]nauthorized" and "beyond the scope of power allowed or granted . . . by law." *Ultra Vires*, Black's Law Dictionary (12th ed. 2024).

> [P]ublic employment is a bundle of sticks and the bundle cannot be formed without constitutional and statutory authorization, but once formed, the public employer and employee may make incidental changes, consistent with or in furtherance of the authorizing statute, by adding or subtracting sticks to the bundle through express or implied agreement.
>
> The . . . [C]ontract claimed by Musser, however, was never authorized and his bundle of sticks never legally existed.

¶10    The court also concluded that "[t]he authorizing statute allowed [Musser] to be hired as the head of the Apple Valley police and fire departments only with the advice and consent of the . . . Council." And because the Council did not give its advice and consent and there "was simply no other statutory authority to hire . . . Musser," "any employment relationship between him and Apple Valley was unlawful" and thus "was 'null and void as an ultra vires act.'" (Quoting *Weese*, 834 P.2d at 3.)

## ISSUE AND STANDARD OF REVIEW

¶11    Musser argues the district court erred in granting the Town's motion for summary judgment. "We review the district court's decision on summary judgment *de novo.*" *Potter v. South Salt Lake City*, 2018 UT 21, ¶ 16, 422 P.3d 803.

## ANALYSIS

### I. Validity of the Contract

¶12    The district court concluded that the Contract was null and void as an ultra vires act because Musser was hired without the advice and consent of the Council. Specifically, the district court

concluded that the council-mayor form of government "allowed [Musser] to be hired as the head of [Apple Valley's] police and fire departments only with the advice and consent of the . . . Council" pursuant to Utah law. Because the Contract was "executed in violation of . . . statute," it was "null and void as an ultra vires act."

¶13 Musser does not challenge this conclusion by the district court. Rather, he asserts a number of arguments as to why the Contract is nonetheless enforceable, including that he had no knowledge of the relevant statutes and ordinances and that Apple Valley ratified the Contract by acquiescence. We find neither argument persuasive.

A.    Lack of Knowledge

¶14 Musser argues that the mayor pro tem had apparent authority to enter into the Contract and that, as a third party, Musser acted in good faith in entering into the Contract. He further argues he was unaware that the Contract would not be effective until the Council gave its advice and consent and that the majority of the sitting Council was required to approve the Contract under the Voting Resolution. But our supreme court has made clear that such knowledge is not required when engaging in transactions with a municipality. "One who deals with a municipal corporation does so at his peril. He is presumed to know the municipal ordinances controlling the administration of public business and the limitations on the powers and authority of the [municipality] officers he is dealing with." *Thatcher Chem. Co. v. Salt Lake City Corp.*, 445 P.2d 769, 771 (Utah 1968) (cleaned up). Simply put, "[e]very person contracting with a municipal corporation, or one who proposes to enter into a contract with such corporation, is bound to take notice of the provisions of the city ordinances and any limitations therein contained." *Id.*

¶15 So even if we assume that Musser had no knowledge of the controlling statutes or the Voting Resolution—indeed, even if he had been "misled into thinking that [he] had entered into a

contract with" Apple Valley—he "was nevertheless charged with knowledge that the . . . [C]ontract was without binding effect until it was approved by" a three-vote majority of the Council. *Id.* at 771–72. Thus, the mayor pro tem's apparent authority and Musser's lack of knowledge are irrelevant and cannot overcome the fact that the Contract was never approved by Apple Valley.

B.     Ratification by Acquiescence

¶16     Musser next argues that Apple Valley's conduct after the Council's vote demonstrated an intent to ratify the Contract by acquiescence. Specifically, Musser points to Apple Valley's five-week delay, after the vote, in firing him and the continued payment for his services during this time. "A principal may impliedly or expressly ratify an agreement made by an unauthorized agent." *Bradshaw v. McBride*, 649 P.2d 74, 78 (Utah 1982). And a "principal's intent to ratify may be found under circumstances of acquiescence . . . . In other words, an intent to ratify may be implied where the principal knows that another has purported to act as its agent and the principal fails to object within a reasonable time." *Zions Gate R.V. Resort, LLC v. Oliphant*, 2014 UT App 98, ¶ 17, 326 P.3d 118 (cleaned up).

¶17     But here, ratification by acquiescence is not available as a means for approving the Contract because the statute provides the only permissible method: advice and consent by the Council. *See* Utah Code § 10-3b-202(1)(d)(ii). As explained in *Weese v. Davis County Comm'n*, 834 P.2d 1 (Utah 1992),

> Any contract, express or implied, between [one or more parties] and [a municipality] is subject to the statutory and constitutional limitations on the [municipality] as a governing body. [A municipality] only has those rights and powers granted it by the Utah Constitution and statutes or those implied as a necessary means to accomplish them. Any act by [a municipality] in excess of this

authority or forbidden by the Utah Constitution is null and void as an ultra vires act.

*Id.* at 3 (cleaned up). Because Utah law requires the Council's advice and consent for the appointment of department heads, *see* Utah Code § 10-3b-202, that was the only process by which Apple Valley could enter into a valid contract with Musser. Any other theory of enforcing a contract does not apply because it would exceed the authority given to Apple Valley by statute. *Cf. Weese*, 834 P.2d at 4–5 (recognizing the "general rule that estoppel may not be asserted against a governmental entity").

¶18 Moreover, even if ratification by acquiescence was possible here, Apple Valley did object and did so in a reasonable time. The Council voted on the Appointment Resolution on December 2, 2021—approximately three weeks after Musser began working—and did not approve the Contract. Thus, the vote constituted an "objection" by Apple Valley to the formation of the Contract. But because Musser nonetheless continued to work even after the Council's vote, Apple Valley was forced to "object" once again, and it did so through Walters and a majority of the Council sending Musser the termination letter on January 10, 2022, only one week after Walters took office as the new mayor. Such actions constitute objections to the Contract that were made within a reasonable time.

¶19 In sum, ratification by acquiescence is not available where the statute provides the exclusive method for contracting with a municipality. And even if ratification by acquiescence were available to enforce the Contract, Musser would not be able to demonstrate the required elements.[4]

---

4. Musser also argues he is entitled to attorney fees in connection with this appeal. Because Musser does not prevail, we do not award him attorney fees.

CONCLUSION

¶20 The district court did not err in concluding that the Contract was invalid, because the Council never gave its advice and consent as required by statute. Musser's arguments to the contrary are unavailing. Accordingly, we affirm the district court's grant of summary judgment in favor of the Town.

_____