2026 UT App 37

## THE UTAH COURT OF APPEALS

OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY,
Appellee,
*v.*
CAP FUND 783 LLC AND MATT BAKER,
Appellants.

Opinion
No. 20250117-CA
Filed March 19, 2026

Fourth District Court, Provo Department
The Honorable Derek P. Pullan
No. 200401089

Kennedy D. Nate, Austin C. Nate, and
Stephen R. Arroyo, Attorneys for Appellants

Peter C. Schofield, Justin W. Starr, and
Joseph V. Osmond, Attorneys for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

OLIVER, Judge:

¶1      Matt Baker entered into a series of real estate transactions
on behalf of Cap Fund 783 LLC (Cap Fund). Old Republic
National Title Insurance Company (Old Republic) acted as the
escrow agent in these transactions. When Old Republic went to
distribute the escrowed funds it had collected, confusion arose
about whether Matt[1] or his brother Shane Baker was entitled to
the funds owed to Cap Fund. Old Republic then interpleaded the

---

1. Because Matt Baker and Shane Baker share a surname, we refer
to them in this opinion by their given names, with no disrespect
intended by the apparent informality.

funds with the district court. Matt filed counterclaims against Old Republic, alleging it mishandled the escrowed funds in numerous ways. Old Republic moved for summary judgment on all of Matt's counterclaims, asserting it was immune from suit because the claims arose from its decision to interplead the funds and arguing Matt could not prove two of his counterclaims as a matter of law. The district court agreed, dismissed all of Matt's counterclaims, and awarded attorney fees to Old Republic on both equitable and statutory grounds.

¶2     On appeal, Matt argues that (1) interpleader immunity does not apply to his counterclaims because they are based on actions and harms separate from Old Republic's decision to interplead the funds and (2) he produced evidence in support of his counterclaims. He also challenges the award of attorney fees to Old Republic. We reverse the grant of summary judgment based on interpleader immunity and we therefore vacate the equitable award of attorney fees for defending those claims. We also reverse the grant of summary judgment on Matt's tortious interference claim, but we affirm the grant of summary judgment on his civil conspiracy claim. And we reverse the statutory award of attorney fees.

## BACKGROUND[2]

### *The Real Estate Transaction*

¶3     Matt, purporting to act on behalf of Cap Fund, entered into an agreement with a seller (Seller) to purchase real property in Utah County for $373,000 (the Contract). The Contract was

---

2. "In reviewing the district court's grant of summary judgment, we review the facts in the light most favorable to [Matt], as the nonmoving party. We present contrary facts only when necessary to understand the issues raised on appeal." *Musser v. Town of Apple Valley*, 2025 UT App 197, n.1, 582 P.3d 1284 (cleaned up).

between Seller and Cap Fund. Matt signed the Contract on behalf of Cap Fund, an entity he created for purposes of this transaction.[3] Matt—acting in his personal capacity, without mention of Cap Fund—then entered into an additional agreement to sell the same property to another buyer (Buyer) for a higher price (the Addendum). Matt and Buyer were the only parties to the Addendum. Then Matt—again purporting to act on behalf of Cap Fund—signed a document assigning Cap Fund's interest in the Contract to Buyer (the Assignment). Cap Fund, Seller, and Buyer were the parties to the Assignment. Through this new arrangement, Buyer would pay Seller the $373,000 directly and then pay Matt an assignment fee of $767,000 (the Assignment Fee).

¶4    Old Republic served as the escrow agent to manage this transaction. Old Republic closed the transaction and escrowed $708,800 as the Assignment Fee owed to Cap Fund.[4]

¶5    After closing, Matt requested Old Republic wire the Assignment Fee to his personal bank account. However, Cap Fund corporate documents listed Shane as the company's registered agent and manager. While speaking to an Old Republic employee about why it could not honor his request to wire the

---

3. After appellants filed their opening brief, the district court declared Shane to be the sole manager and member of Cap Fund. Neither party raised the issue of whether the attorneys representing Cap Fund in this appeal remain authorized to do so following this ruling by the district court. We therefore identify the issue as one to be addressed by the district court on remand, as necessary.

4. The $708,800 reflects deductions from the $767,000 Assignment Fee of a $50,000 deposit of earnest money and $8,200 for an engineering study. The parties dispute whether it was proper for Old Republic to deduct these amounts. We offer no opinion on the matter as the question is not before us.

funds to his personal bank account, Matt repeatedly asserted that Shane had assigned Cap Fund's interest in the Contract to him. After this conversation, Matt sent an email to Old Republic indicating that Shane would send wire instructions for Cap Fund. The next day, he sent a follow-up email indicating that Old Republic should have received the wire instructions for Cap Fund in an email from Shane. But no such email had arrived. Following these confusing exchanges, Old Republic contacted Shane, who, upon learning of the existence of the funds, claimed ownership of them. Matt then changed Cap Fund's corporate documents to remove Shane as the listed manager and registered agent and list himself instead.[5]

*The Litigation*

¶6    Because of the confusion over the proper ownership of the Assignment Fee, Old Republic interpleaded the funds it had collected, depositing the full escrowed amount of $708,800 with the district court. Matt then counterclaimed against Old Republic. Matt originally asserted three counterclaims: breach of fiduciary duties, breach of implied contract, and negligence (the Original Claims). The Original Claims asserted misdoings only regarding Old Republic's disbursement of the escrowed funds. After an initial amended counterclaim, Matt filed a second amended counterclaim, which included two additional claims: tortious interference and civil conspiracy (the Additional Claims). The second amended counterclaim also amended the Original Claims to include allegations that Old Republic did not collect the correct

---

5. In connection with this transaction, Matt was later convicted by a federal jury on "two counts of wire fraud (one for the phone call with Old Republic and one for changing Cap Fund's registration information online)." *United States v. Baker*, 155 F.4th 1188, 1193 (10th Cir. 2025).

amount of funds and to claim damages beyond the amount of the escrowed funds.

¶7 Old Republic moved for summary judgment on all five of Matt's claims, asserting interpleader immunity as to the Original Claims and arguing Matt could not establish the elements of the Additional Claims as a matter of law. The district court granted the motion as to the Original Claims because, in the court's view, those claims were limited to allegations regarding the manner in which Old Republic had disbursed the funds and there was "no record evidence that Old Republic engaged in actionable conduct independent of its decision to interplead the funds" that could constitute the basis for bringing such claims. The district court also granted the motion as to the Additional Claims. On the civil conspiracy claim, the court concluded that "there [wa]s no record evidence that Old Republic conspired with Shane" and that "to infer conspiracy from this record [wa]s a leap of speculation that is not permitted."[6] And on the tortious interference claim, the court concluded that Old Republic owed Matt no duty and, therefore, the tortious interference claim failed "[t]o the extent [it] rest[ed] on a breach of fiduciary duty as the improper means."

¶8 The court later awarded attorney fees to Old Republic. Under its "equitable authority to award fees to an interpleader," the court awarded fees incurred in defense of the Original Claims. The court concluded that the Original Claims were barred by interpleader immunity because Matt did not complain of Old Republic's behavior until it refused to pay him directly. The court also awarded fees for the defense of the Additional Claims under Utah Code section 78B-5-825 (the Bad Faith Statute). The court found that both of the Additional Claims "were without merit in that they had no credible basis in fact" and that "Matt . . . did not

---

6. The court further noted that "Old Republic owed no fiduciary duty to [Matt], and without this underlying tort, the civil conspiracy claim would fail as a matter of law."

have an honest belief in either the propriety of his civil conspiracy claim or tortious interference claim."

ISSUES AND STANDARDS OF REVIEW

¶9    Matt raises several arguments challenging the district court's grant of summary judgment. "We review summary judgments for correctness, giving no deference to the [district] court's decision . . . ." *Bahr v. Imus*, 2011 UT 19, ¶ 16, 250 P.3d 56.

¶10    Next, Matt challenges the award of attorney fees by the district court. We review an award of attorney fees under the court's equitable authority for an abuse of discretion. *See Anderton v. Boren*, 2017 UT App 232, ¶ 14, 414 P.3d 508. We review fees awarded under the Bad Faith Statute "as a mixed question of law and fact." *McFarland v. McFarland*, 2024 UT App 31, ¶ 12, 547 P.3d 204 (cleaned up). "A finding of bad faith is a question of fact and is reviewed by this court under the clearly erroneous standard, but a without merit determination is a question of law that we review for correctness." *Id.* (cleaned up).

ANALYSIS

I. Summary Judgment

¶11    Matt's challenge to the grant of summary judgment comes in two parts. First, he argues interpleader immunity does not apply to the Original Claims. Second, he argues the court erred in concluding the Additional Claims failed as a matter of law. We address each argument in turn.

A.    The Original Claims

¶12    Old Republic moved for summary judgment on the Original Claims on the ground that it was immune from suit as an

interpleader of funds. The district court agreed because there was "no record evidence that Old Republic engaged in actionable conduct independent of its decision to interplead the funds." This dismissal was grounded in the common-law principle of interpleader immunity. *See Horton's Ex'r v. Baptist Church & Soc'y in Chester*, 34 Vt. 309, 314 (1861) ("It follows hence, that when the contesting parties are brought before the court, the [interpleader] may then lay off, . . . being sure, that, so far as he is concerned, he will enjoy immunity in the conflict, and safety in the result."). "An action in interpleader is a proceeding in equity in which a person who has possession of money . . . which may be owned or claimed by others seeks to rid himself of risk of liability . . . by disclaiming his interest and submitting the matter of ownership for adjudication by the court." *Terry's Sales, Inc. v. Vander Veur*, 618 P.2d 29, 31 (Utah 1980); *see also* Utah R. Civ. P. 22 ("Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability.").

¶13   Matt contends on appeal that his counterclaims were not subject to dismissal under interpleader immunity asserting that his counterclaims were based on more than Old Republic's decision to interplead the funds, including that it "miscalculated the funds" it was supposed to collect at closing and that Old Republic, by its own actions, created the dispute over ownership of the Assignment Fee. Although Old Republic defended the propriety of the district court's grant of summary judgment on interpleader immunity in its briefing, at oral argument Old Republic conceded that interpleader immunity did not bar the Original Claims to the extent that Matt's second amended counterclaim alleged wrongdoing by Old Republic beyond merely interpleading the funds (i.e., causing the dispute by contacting Shane about the Assignment Fee) and alleged damages in addition to the amount of the interpleaded funds (i.e., under-collecting the funds at closing).

¶14 Based on Old Republic's concession, the district court's grant of summary judgment on the Original Claims was improper because it was granted solely on interpleader immunity.[7] Accordingly, we reverse the grant of summary judgment on the Original Claims, and we remand to the district court for further proceedings on those claims.

B. The Additional Claims

¶15 Old Republic moved for summary judgment on the Additional Claims on their respective merits, arguing Matt could not establish the required elements for either claim. The district court agreed and granted summary judgment to Old Republic. We reverse the grant of summary judgment on the tortious interference claim, and we affirm the grant of summary judgment on the civil conspiracy claim.

1. Tortious Interference

¶16 "To recover damages for tortious interference a plaintiff must prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff." *Musselman v. Keele*, 2024 UT App 143, ¶ 21, 559 P.3d 64 (cleaned up). In its motion for summary judgment, Old Republic argued that Matt had not put forth sufficient evidence to prove the "improper means" element of this claim. In response, Matt asserted that violation of fiduciary duties and "standards established for title companies" could constitute improper means under Utah case law. The district court determined that "Old Republic owed no fiduciary duty to [Matt]" and dismissed Matt's

_____

7. The district court was correct in concluding that, to the extent the Original Claims allege wrongdoing related to disbursement of the funds, those claims are barred by interpleader immunity. But as amended, the Original Claims are broader than that, and to that extent, interpleader immunity is not a basis for dismissal.

tortious interference claim "[t]o the extent [it] rest[ed] on a breach of fiduciary duty as the improper means."

¶17    On appeal, Matt asserts the district court's decision was erroneous because Old Republic owed him a duty as an escrow agent for a financial transaction he was a party to. We agree with Matt that Old Republic owed him a duty. An escrow agent owes a duty to all parties "who are identified as intended beneficiaries" of a transaction. *Orlando Millenia, LC v. United Title Servs. of Utah, Inc.*, 2015 UT 55, ¶ 32, 355 P.3d 965. And under the Addendum, Matt was a party to the transaction in his individual capacity. Thus, Old Republic owed a duty to Matt, and the district court therefore erred in concluding that Matt could not prove the required "improper means" because Old Republic owed him no duty. Accordingly, we reverse the grant of summary judgment on the tortious interference claim and remand to the district court for further proceedings on that claim.

2.    Civil Conspiracy

¶18    To prove the tort of civil conspiracy, a plaintiff must show "clear and convincing evidence" of "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Pyper v. Reil*, 2018 UT App 200, ¶ 16, 437 P.3d 493 (cleaned up). Old Republic moved for summary judgment on Matt's civil conspiracy claim asserting, "there [wa]s no evidence" that Old Republic "conspired with anyone." In response, Matt argued that Old Republic conspired with Shane to deprive Matt of the Assignment Fee because Shane had no knowledge of the transaction until Old Republic contacted him. The district court determined that "there [wa]s no record evidence that Old Republic conspired with Shane" and that "to infer conspiracy from this record [wa]s a leap of speculation that is not permitted."

¶19    On appeal, Matt does not present any argument challenging the district court's ruling on his civil conspiracy claim. His only argument regarding his civil conspiracy claim was made in the context of the award of attorney fees. It is an appellant's "burden of persuasion on appeal . . . to tell us where and how the district court went wrong," specifically by "address[ing] the reasoning and basis of the district court's ruling and . . . explain[ing] why that court got it wrong." *Lavender v. FCOI Pres., LLC*, 2025 UT App 47, ¶¶ 100, 106, 569 P.3d 1037 (cleaned up), *cert. denied*, 570 P.3d 660 (Utah 2025). Matt failed to do so, and thus we need not address this issue on its merits. *See Allen v. Friel*, 2008 UT 56, ¶ 7, 194 P.3d 903 (holding that where "an appellant fails to allege specific errors of the lower court, the appellate court will not seek out errors in the lower court's decision"). Accordingly, we affirm the district court's grant of summary judgment on Matt's civil conspiracy claim.

## II. Attorney Fees

¶20    The district court awarded attorney fees to Old Republic in two parts. For the Original Claims, the court awarded fees under its equitable authority. And for the Additional Claims, the court awarded fees under the Bad Faith Statute. Because we reverse the district court's grant of summary judgment on the Original Claims, we vacate the associated award of attorney fees. But because we affirm the district court's grant of summary judgment on the civil conspiracy claim, we review Matt's challenge to the attorney fees awarded under the Bad Faith Statute.

¶21    Matt challenges the award of attorney fees under the Bad Faith Statute on two grounds. He first asserts the district court erred because it based its award on a determination that the Additional Claims were without merit and not brought in good faith when the Bad Faith Statute required the court to find that "the action" was without merit and not brought in good faith. Second, Matt argues the district court erred in finding that the

Additional Claims were without merit. Because we agree with Matt on his first argument, we do not reach his second argument.

¶22 Here, the court found the Additional Claims were "without merit in that they had no credible basis in fact" and Matt "did not have an honest belief in either the propriety of his civil conspiracy claim or tortious interference claim." But under the Bad Faith Statute, the court must determine "that the *action* . . . was without merit and not brought or asserted in good faith" before awarding attorney fees. Utah Code § 78B-5-825(1) (emphasis added). The court's decision failed to address whether Matt's action as a whole was brought in bad faith and was without merit; it based its award only on the Additional Claims. Although we would normally remand the matter for additional factual findings on whether the action was without merit and not brought in good faith, such findings would be premature where we have reversed the grant of summary judgment on the Original Claims.

¶23 Accordingly, we reverse the award of attorney fees under the Bad Faith Statute on the Additional Claims. The district court remains free, however, to consider an award of attorney fees to Old Republic under the Bad Faith Statute if, at the conclusion of the entire litigation, Old Republic is considered a prevailing party in the action.[8]

## CONCLUSION

¶24 We reverse the grant of summary judgment on Matt's Original Claims and vacate the equitable award of attorney fees for the defense of those claims. We reverse the grant of summary judgment on Matt's claim for tortious interference, affirm the grant of summary judgment on Matt's claim for civil conspiracy,

---

8. Old Republic also requests attorney fees for this appeal. We decline to award such fees.

and reverse the award of statutory attorney fees on those claims. Accordingly, we remand the matter for further proceedings.

—————————